UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

VICTOR RIVERA,

                              Plaintiff,

                    -v.-

BOARD OF EDUCATION OF THE CITY
SCHOOL DISTRICT OF THE CITY OF
NEW YORK, *a/k/a* THE NEW YORK CITY
DEPARTMENT OF EDUCATION,

                              Defendant.

---

19 Civ. 11624 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiff Victor Rivera is a history teacher who has worked at A.P. Randolph High School from 2010 until the present, for Defendant New York City Department of Education (the "DOE"). In addition to working as a history teacher, Plaintiff also served as a dean of the school from 2011 until the end of the 2015 school year, at which time his deanship was not renewed. Plaintiff asserts four causes of action against Defendant pursuant to 42 U.S.C. § 1983, alleging claims of race and national origin discrimination, retaliation, and failure to hire. Defendant moves to dismiss under Federal Rule of Civil Procedure 12(b)(6); it argues that Plaintiff's claims are largely time-barred; that Plaintiff fails to make out a claim for municipal liability; and that, in any event, Plaintiff fails to state a claim upon which relief can be granted. For the reasons set forth in the remainder of this Opinion, the Court agrees with Defendant and grants the motion, but will grant in part Plaintiff's request for leave to amend his pleadings.

## BACKGROUND[1]

### A.    Factual Background

Plaintiff, an Hispanic man who self-identifies as being of Latino-Puerto Rican heritage, started working at the A.P. Randolph High School ("the School") in 2010 as a history teacher.  (Compl. ¶¶ 8-9, 13, 20).  In or around 2011, David Fanning became the School's principal.  (*Id.* at ¶ 18).  At around the same time, Plaintiff assumed the role of a dean.  (*Id.* at ¶¶ 15, 18).  As dean, Plaintiff continued to teach history, but also took on responsibilities related to maintaining the security and safety of the School.  (*Id.* at ¶¶ 16-17).

### 1.    Allegations of Discrimination from 2011 to 2016

Plaintiff alleges that, during his deanship, Fanning fostered an environment at the School that was "replete with racial bias" (Compl. ¶ 22); among other things, Fanning made disparaging comments about non-white students and their families, purportedly calling them "ghetto" and stating that these students "would not amount to anything because they were 'a reflection of their parents'" (*id.* at ¶¶ 23, 25).  Plaintiff alleges that he too became the target of Fanning's racial bias, claiming that Fanning targeted him in part because he spoke out against Fanning's inappropriate and discriminatory

---

[1]    This Opinion draws its facts from Plaintiff's Complaint ("Compl." (Dkt. #1)), the well-pleaded allegations of which are taken as true for purposes of this motion; the exhibits attached to Jennifer Y. Hwang's Declaration in Support of Defendant's Motion to Dismiss ("Hwang Decl., Ex. [ ]" (Dkt. #13)); and the exhibits attached to Gabrielle Vinci's Declaration in Opposition to the Motion to Dismiss ("Vinci Decl., Ex. [ ]" (Dkt. #18)).

For convenience, the Court refers to Defendant's Memorandum of Law in Support of Its Motion to Dismiss as "Def. Br." (Dkt. #14); Plaintiff's Memorandum of Law in Opposition to the Motion as "Pl. Opp." (Dkt. #17); and Defendant's Reply Memorandum of Law in Support of Its Motion as "Def. Reply" (Dkt. #19).

comments.  (*Id.* at ¶¶ 24, 26).  According to Plaintiff, shortly after assuming his job as principal at the School in 2011, Fanning took Plaintiff's immediate supervisor aside and told her to "keep an eye on" Plaintiff.  (*Id.* at ¶¶ 27, 30). Plaintiff alleges that this incident foreshadowed a "continuing pattern of behavior targeted towards [Plaintiff] and, upon information and belief, intended to single out [Plaintiff] in light of his race and national origin."  (*Id.* at ¶ 34).

Over the next five years, from approximately 2011 through the end of the 2015 school year, Fanning allegedly subjected Plaintiff to various forms of discriminatory behavior, including:

- "instruct[ing] many of the administrators at the School to follow and stalk [Plaintiff] during work hours" (Compl. ¶ 36);

- "consistently treat[ing] Plaintiff less well than his similarly situated colleagues on the basis of his race and/or national origin," by "afford[ing] Plaintiff's non-Hispanic colleagues better professional opportunities and equipment to fulfill their job duties" (*id.* at ¶¶ 42-43, 50);

- failing to discipline students who subjected Plaintiff to "verbal abuse" (*id.* at ¶¶ 51-55);

- showing a preference for white faculty and students, for example, by imposing harsh penalties on minority students and by "protect[ing] the Caucasian staff in disciplinary proceedings more strongly than the minority staff members" (*id.* at ¶¶ 57-66); and

- telling Plaintiff's supervisor that the reason Plaintiff did not receive a screen to monitor security footage was because "Fanning 'did not feel comfortable [because] "you know how those Latinos can be"'" (*id.* at ¶ 49).

During this time, Plaintiff complained to his supervisors about Fanning's discriminatory treatment of him as well as Fanning's discriminatory attitude

and actions towards non-white students.  (*Id.* at ¶¶ 67-68).  However, his complaints were "largely ignored."  (*Id.* at ¶ 69).

### 2.    Plaintiff's Deanship Is Not Renewed

At the end of the 2015-2016 school year, Plaintiff expressed an interest in renewing, and was encouraged to apply for, his position as a dean.  (Compl. ¶¶ 72-80).  However, over the summer, Plaintiff heard nothing from the School about his deanship.  (*Id.* at ¶ 83).  Indeed, Plaintiff was notified in August of 2016 that he was assigned to teach a full course load for the upcoming school year, suggesting that he did not get the deanship.  (*Id.* at ¶¶ 85-86).  Shortly thereafter, on the first day of the 2016-2017 school year, Fanning confirmed that Plaintiff did not get the deanship for the 2016-2017 school year, and told Plaintiff that his deanship was not renewed due to budgetary reasons.  (*Id.* at ¶¶ 88-92).[2]  Plaintiff alleges that he was denied the deanship, "despite his qualifications, positive performance as a dean, and his noted interest in continuing in the role" (*id.* at ¶ 91), for discriminatory reasons (*see id.* at ¶¶ 141-50).  Plaintiff further alleges that Fanning's budgetary excuse was pretextual, because Plaintiff was replaced as dean "with an [Active Teacher Reserve] employee who, upon information and belief, was Caucasian," and who "cost the School more money to retain" than having Plaintiff continue as dean. (*Id.* at ¶¶ 93-96).

---

[2]     The Complaint does not specify the first day of the 2016-2017 school year.  Presumably it was sometime in late August or September.  In any event, Plaintiff does not dispute that it took place before December 19, 2016.  (*See generally* Pl. Opp.).

### 3. Allegations of Discrimination from the 2016-2017 School Year to the Present

Plaintiff states that during the 2016-2017 school year, his work environment deteriorated to the point where it was so "caustic" and "unlivable" that he decided to take a voluntary sabbatical for the 2017-2018 school year. (Compl. ¶¶ 97, 99). Specifically, Plaintiff alleges that "Fanning acted very coldly towards Plaintiff, going so far as to outright ignore [Plaintiff] in person and over email." (*Id.* at ¶ 98).

When Plaintiff returned from his sabbatical for the 2018-2019 school year, "Fanning continued to treat [him] as a second-class citizen in the workplace." (Compl. ¶ 102). Specifically, in the 2018-2019 school year, Plaintiff received "lower than average" ratings on his classroom observation reports, and consequently his overall yearly evaluation was "significantly negatively impacted." (*Id.* at ¶ 104). Plaintiff alleges that his immediate supervisor told him that Fanning "was vehemently opposed to issuing Plaintiff effective and/or satisfactory ratings, even when such ratings were earned and warranted," and that his poor evaluations were due to pressure from Fanning. (*Id.* at ¶¶ 104-05). Plaintiff also alleges that Defendant continued to "ignore instances of physical violence towards [Plaintiff] in the workplace." (*Id.* at ¶ 107).

On December 21, 2018, Plaintiff commenced an action in New York State Supreme Court, New York County, alleging race discrimination and retaliation against Defendant and Fanning. (Compl. ¶ 6). On October 21, 2019, following motion practice and nearly a year of litigation, Plaintiff filed a stipulation of

5

dismissal in his state court lawsuit, dismissing his claims against Fanning with prejudice and dismissing his claims against Defendant without prejudice. (*Id.* at ¶ 7; Hwang Decl., Ex. 2). Plaintiff alleges that his poor performance evaluations were, in whole or in part, made in retaliation for Plaintiff's state court lawsuit and his verbal complaints about discrimination (*see* Compl. ¶ 106), but the Complaint does not allege the dates on which Plaintiff claims that he received any of the negative evaluations in question (*see generally id.* at ¶¶ 101-06).

## B.    Procedural Background

Plaintiff initiated this action on December 19, 2019. (Dkt. #1). On January 15, 2020, Defendant sought leave to file a motion to dismiss (Dkt. #6), and Plaintiff submitted a letter in opposition on January 16, 2020 (Dkt. #7). The Court held a pre-motion conference with the parties on February 6, 2020 (*see* Minute Entry for February 6, 2020), and set a schedule for briefing on Defendant's motion the following day (Dkt. #9). Defendant filed its motion to dismiss and supporting papers on March 12, 2020 (Dkt. #12-14); Plaintiff filed his opposition papers on April 17, 2020 (Dkt. #17-18); and Defendant filed its reply brief on May 1, 2020 (Dkt. #19).

## DISCUSSION

## A.    Applicable Law

### 1.    Motions to Dismiss under Federal Rule of Civil Procedure 12(b)(6)

When a court considers a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), it must "draw all reasonable inferences in Plaintiff['s] favor,

assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (quoting *Selevan* v. *N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)) (internal quotation marks omitted).  A plaintiff will survive a motion to dismiss if she alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to nudge [a plaintiff's] claims across the line from conceivable to plausible." (internal quotation marks and citation omitted)).

The Court is not, however, bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon* v. *Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (citation omitted); *see also Harris* v. *Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("[A]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks, brackets, and citation omitted)).  "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco* v. *MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citations omitted).

2.     **Employment Discrimination Claims Brought Pursuant to Section 1983**

Plaintiff brings claims under 42 U.S.C. § 1983, which statute affords no substantive rights on its own and simply provides a remedy for a deprivation of federal statutory or constitutional rights, including for violations of the Equal Protection Clause of the Fourteenth Amendment, as alleged here.  *City of Okla. City* v. *Tuttle*, 471 U.S. 808, 816 (1985); *Patterson* v. *Cnty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004).  "To state a claim under § 1983, a plaintiff must allege two elements: [i] the violation of a right secured by the Constitution and laws of the United States; and [ii] the alleged deprivation was committed by a person acting under color of state law."  *Vega* v. *Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87-88 (2d Cir. 2015) (internal quotation marks omitted).

In the employment context, claims raised under § 1983 are analyzed under the familiar *McDonnell Douglas* burden-shifting framework applied to Title VII claims.  *Brown* v. *City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012); *Ruiz* v. *Cnty. of Rockland*, 1, 491 (2d Cir. 2010); *see also McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802-03 (1973).  To state a claim under Title VII sufficient to survive a motion to dismiss, a plaintiff need not prove the ultimate question of whether a defendant's actions were discriminatory; rather, a plaintiff must "give plausible support to a minimal inference of discriminatory motivation."  *Littlejohn* v. *City of N.Y.*, 795 F.3d 297, 311 (2d Cir. 2015); *accord Vega*, 801 F.3d at 84.  Plaintiff must allege "[i] the employer took adverse action against him and [ii] his race, color, religion, sex, or national origin was a motivating factor in the employment decision."  *Vega*, 801 F.3d at 86.  Plaintiff

"may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Id.* at 87.

However, a "§ 1983 action may not be brought to vindicate rights conferred only by a statute that contains its own structure for private enforcement, such as Title VII." *Patterson*, 375 F.3d at 225.  The Second Circuit has carefully explained two important differences between employment discrimination claims brought under § 1983 and those brought under Title VII: First, when claims under § 1983 are raised against a municipality — as they are here — "the plaintiff is required to show that the challenged acts were performed pursuant to a municipal policy or custom." *Id.* at 226; *see also Monell* v. *Dep't of Social Servs.*, 436 U.S. 658, 694 (1978).  Second, claims under § 1983 require a showing of discriminatory intent, whereas a Title VII claim can be sustained on mere negligence.  *Patterson*, 375 F.3d at 226.

**B.    Analysis**

Plaintiff asserts four claims, all for alleged violations of the Equal Protection Clause of the Fourteenth Amendment brought pursuant to § 1983: (i) race discrimination; (ii) national origin discrimination; (iii) retaliation; and (iv) failure to hire.  (Compl. ¶¶ 111-50).  Defendant moves to dismiss the Complaint in its entirety, arguing that Plaintiff's claims are untimely, that Plaintiff has not adequately alleged municipal liability, and that Plaintiff has failed to state a claim for which relief can be granted.  For the reasons discussed herein, the Court agrees with Defendant and dismisses Plaintiff's

complaint in its entirety.  However, the Court grants Plaintiff's request to amend his complaint in part.

### 1.     Allegations That Pre-Date December 19, 2016, Are Untimely

In § 1983 actions, the applicable limitations period is the "general or residual state statute of limitations."  *Pearl* v. *City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (internal quotation marks and alterations omitted).  For a § 1983 claim arising in New York, the statute of limitations is three years.  *See Lucente* v. *Cnty. of Suffolk*, 980 F.3d 284, 308 (2d Cir. 2020) (citing *Owens* v. *Okure*, 488 U.S. 235, 250-51 (1989)); *Lawson* v. *Rochester City Sch. Dist.*, 446 F. App'x 327, 328 (2d Cir. 2011) (summary order).  Federal law, however, determines when a § 1983 cause of action accrues.  *See Pearl*, 296 F.3d at 80. "[A]ccrual occurs 'when the plaintiff knows or has reason to know of the injury which is the basis of his action.'"  *Id.* (quoting *Singleton* v. *City of New York*, 632 F.2d 185, 191 (2d Cir. 1980)).

Plaintiff filed his complaint on December 19, 2019.  (*See generally* Compl.).  Therefore, all claims that accrued before December 19, 2016, are time-barred, *see Lawson*, 446 F. App'x at 328, including all claims based on conduct or events that occurred from the time Plaintiff started work at the School in 2010 until well after his deanship was not renewed in late summer of 2016 (*see id.* at ¶¶ 13, 88-92).  Thus, the vast majority of Plaintiff's allegations — including those related to Defendant's decision to not renew Plaintiff's deanship — are untimely.  (*Id.* at ¶¶ 86-92 (alleging that Plaintiff

knew or had reason to know that his deanship was not renewed well before December 2016)).

Plaintiff "does not dispute that his claims are subject to a three-year statute of limitations." (Pl. Opp. 6). Instead, Plaintiff argues that the "continuing violation doctrine" applies to preserve his otherwise time-barred claims. (*Id.*). "The continuing violation doctrine is an 'exception to the normal knew-or-should-have-known accrual date' if there is 'evidence of an ongoing discriminatory policy or practice.'" *Corona Realty Holding, LLC* v. *Town of N. Hempstead*, 382 F. App'x 70, 72 (2d Cir. 2010) (summary order) (quoting *Harris* v. *City of N.Y.*, 186 F.3d 243, 248 (2d Cir. 1999)). "[A] continuing violation may be found where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Cornwell* v. *Robinson*, 23 F.3d 694, 704 (2d Cir. 1994). Where such a continuing violation is shown, "the plaintiff is entitled to bring suit challenging all conduct that was a part of that violation, even conduct that occurred outside the limitations period." *Id.*

"Discrete incidents of discrimination that are not part of a discriminatory policy or practice, however, cannot be continuing violations." *Corona Realty Holding*, 382 F. App'x at 72. In other words, the continuing violation doctrine does not apply to "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire[, which] are easy to identify." *Nat'l R.R. Passenger Corp.* v. *Morgan*, 536 U.S. 101, 114 (2002). Thus, the continuing violation

11

doctrine does not apply to Plaintiff's failure to hire claim, or to his discrimination and retaliation claims to the extent they are based on Defendant's failure to renew Plaintiff's deanship.

Plaintiff also alleges discrimination and retaliation claims based on a hostile work environment and because of "disparate treatment and an atmosphere of adverse employment actions." (*See* Compl. ¶¶ 114-15, 124-25, 136). As an initial matter, as discussed in greater detail below, Plaintiff has failed to plead a viable hostile work environment claim based on timely allegations. And "[t]o bring a claim within the continuing violation exception, a plaintiff must at the very least allege that one act of discrimination in furtherance of the ongoing policy occurred within the limitations period." *Patterson*, 375 F.3d at 220. *Accord Davis-Garett* v. *Urban Outfitters, Inc.*, 921 F.3d 30, 42 (2d Cir. 2019) ("A charge alleging a hostile work environment claim … will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice *and at least one act falls within the time period*." (alterations in original) (quoting *Morgan*, 536 U.S. at 122)). The only non-conclusory conduct specifically alleged to be discriminatory in the Complaint that is not time-barred is that:

> i.  "[t]hroughout the 2016/2017 academic year, Fanning acted very coldly towards Plaintiff, going so far as to outright ignore Mr. Rivera in person and over email" (*id.* at ¶ 98); and
>
> ii. Plaintiff's supervisor told him "that the reason [he] received such poor performance ratings was due to pressure from Fanning NOT to rate [Plaintiff] 'highly effective,'" and that "[F]anning was vehemently opposed to issuing Plaintiff

> effective and/or satisfactory ratings, even when
> such ratings were earned and warranted" (*id.* at
> ¶ 105). [3]

Plaintiff fails to establish that the continuing violation doctrine applies to his hostile work environment claim. While "the time-barred evidence regarding non-discrete acts ... [is] admissible to prove a hostile work environment claim under the continuing violation doctrine," in order to establish that the doctrine applies, Plaintiff must plead that "the time-barred evidence constitutes non-discrete acts that are sufficiently related to the acts that occurred within the limitations period." *Sooroojballie* v. *Port Auth. of N.Y. & N.J.*, 816 F. App'x 536, 542 (2d Cir. 2020) (summary order). Plaintiff fails to meet this requirement because he did not plead any facts to suggest that his timely allegations are part of a "pattern of discriminatory acts extended over time pursuant to a discriminatory policy that, taken together, constitute a single unlawful employment practice." *Fierro* v. *N.Y.C. Dep't of Educ.*, 994 F. Supp. 2d 581, 587 (S.D.N.Y. 2014) (citing *Morgan*, 536 U.S. at 115-18).

Plaintiff argues, in the alternative, that time-barred conduct "may still be considered ... in determining Plaintiff's timely discrimination claims. (Pl.

---

[3]     Plaintiff also pleads several conclusory allegations that are not time-barred (*see, e.g.*, Compl. ¶¶ 99 (alleging a "caustic and unlivable work environment" in the 2016-2017 school year), 102 (alleging that Fanning "treat[ed] Plaintiff as a second-class citizen in the workplace" in the 2018-2019 school year), 107 (alleging that Defendant "continues to discriminate against and retaliate against Plaintiff")). These conclusory claims, completely unsupported by any factual allegations, are insufficient to state a claim for which relief can be granted, even though they are timely. *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). And because these conclusory allegations are insufficient to make out a claim for which relief can be granted, the Court will not consider whether otherwise-time-barred conduct supports these claims.

Opp. 8).  Although Plaintiff is correct that time-barred conduct may be considered as "relevant background evidence" to timely "claim[s] of discrete discriminatory or retaliatory acts," *Davis-Garett*, 921 F.3d at 42, as discussed below, Plaintiff has failed to plead any timely claims based on discrete discriminatory or retaliatory acts.  Thus, Plaintiff fails to allege at least one act of discrimination within the applicable limitations period.  *Cf. Petrosino* v. *Bell Atl.*, 385 F.3d 210, 220 (2d Cir. 2004) ("[E]vidence of earlier promotion denials may constitute relevant 'background evidence *in support of a timely claim.*'" (emphasis added) (quoting *Morgan*, 536 U.S. at 113)).

The Court dismisses with prejudice all of Plaintiff's claims that arise out of Defendant's failure to renew Plaintiff's deanship, because that conduct is time-barred and that event was a "discrete act" to which the continuing violation doctrine does not apply.  *See Morgan*, 536 U.S. at 114.  Additionally, the Court will not consider any time-barred conduct as background evidence in support of a timely claim, because Plaintiff has failed to plead any viable timely claims.  *Accord Petrosino*, 385 F.3d at 220.  However, and as explained further *infra*, the Court finds that Plaintiff has failed to establish that the continuing violation doctrine applies to his hostile work environment claim, but dismisses that claim with leave to amend.

### 2.    Plaintiff Has Failed to Allege Municipal Liability

The DOE is a municipal agency for purposes of § 1983 jurisprudence. *See, e.g.*, *Hurdle* v. *Bd. of Educ. of City of N.Y.*, 113 F. App'x 423, 424 (2d Cir. 2004) (summary order).  Municipal agencies like the DOE are amenable to suit

under § 1983, but cannot "be held liable ... on a respondeat superior theory." *Monell*, 436 U.S. at 691; *see Kimble* v. *Kingston City Sch. Dist.*, 792 F. App'x 80, 81 (2d Cir. 2019) (summary order).

To state a claim for municipal liability — otherwise known as a *Monell* claim — a plaintiff must show that a violation of his constitutional rights resulted from a municipal policy or custom. *Monell*, 436 U.S. at 694. A plaintiff may establish such a violation in a number of ways, including by presenting evidence of:

> [i] an express policy or custom, [ii] an authorization of a policymaker of the unconstitutional practice, [iii] failure of the municipality to train its employees, which exhibits a "deliberate indifference" to the rights of its citizens, or [iv] a practice of the municipal employees that is "so permanent and well settled as to imply the constructive acquiescence of senior policymaking officials."

*Biswas* v. *City of New York*, 973 F. Supp. 2d 504, 536 (S.D.N.Y. 2013) (quoting *Pangburn* v. *Culbertson*, 200 F.3d 65, 71-72 (2d Cir. 1999)); *accord Jones* v. *Bloomberg*, No. 14 Civ. 6402 (KPF), 2014 WL 4652669, at *2 (S.D.N.Y. Sept. 17, 2014) (dismissing § 1983 claim against the City of New York where "[t]he complaint lack[ed] any factual allegations suggesting the existence of an officially-adopted policy or custom that caused Plaintiff['s] injury" (internal quotation marks and alterations omitted)). Thus, in order to bring a § 1983 claim against the DOE, Plaintiff must allege that his constitutional violations are attributable to a municipal policy or custom.

As noted above, Plaintiff advances only two allegations that are not time-barred. *First*, he alleges that Fanning, the School's principal, "acted very coldly

towards Plaintiff, going so far as to outright ignore Mr. Rivera in person and over email." (Compl. ¶ 98). *Second*, he alleges that Fanning caused Plaintiff to receive negative performance evaluations, because of race and/or national origin discrimination, and/or in retaliation for complaining about perceived discrimination. (*Id.* at ¶¶ 105-06).

Although Plaintiff concedes that his claims are "premised predominantly on the actions of ... Fanning," Plaintiff does not assert any § 1983 claims against Fanning individually. (Pl. Opp. 10). Rather, he seeks recovery under § 1983 only against the DOE itself. Under this theory, he must establish that the hostile work environment of which he complains was the product of a DOE "policy or custom." *Monell*, 436 U.S. at 694. "[T]he single act of a municipal policymaker, *i.e.*, a person with the authority to set municipal policy, can constitute official policy, and thus, can give rise to municipal liability." *Santos* v. *New York City*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012) (citing *Pembaur* v. *Cincinnati*, 475 U.S. 469, 480 (1986)). However, the act of a single policymaker can only give rise to municipal liability where "the governmental official is a final policymaker for the local government ... on the particular issue involved in the action." *Hurdle*, 113 F. App'x at 425 (alterations and citations omitted) (quoting *Jeffes* v. *Barnes*, 208 F.3d 49, 57 (2d Cir. 2000)). "'[I]dentification of policymaking officials is a question of state law.'" *Dressler* v. *N.Y.C. Dep't of Educ.*, No. 10 Civ. 3760 (JPO), 2012 WL 1038600, at *17 (S.D.N.Y. Mar. 29, 2012) (quoting *St. Louis* v. *Praprotnik*, 485 U.S. 112, 123 (1988)).

In his complaint, Plaintiff pleads only legal conclusions regarding the DOE's *Monell* liability and advances no factual allegations regarding any policy or practice that could have caused his purported injuries.  (*See* Compl. ¶¶ 108-10).[4]  In his opposition brief, Plaintiff provides a less conclusory argument, asserting that Fanning can be a final policymaker for the purpose of *Monell* liability because his "actions were not reviewable by any higher authority and the plaintiff has alleged a hostile work environment promulgated by the principal and subordinates under the principal's control."  (Pl. Opp. 10 (citing *Elgalad* v. *N.Y.C. Dep't of Educ.*, No. 17 Civ. 4849 (VSB), 2019 WL 4805669, at *6-7 (S.D.N.Y. Sept. 30, 2019)).

Plaintiff is correct that district courts in this Circuit have held that a "public school principal acts as a final policymaker to the extent that the ultimate harm that befell the plaintiff was under the principal's control," and have explicitly held as such when considering hostile work environment claims. *Zambrano-Lamhaouhi* v. *N.Y.C. Bd. of Educ.*, 866 F. Supp. 2d 147, 175 (E.D.N.Y. 2011) (collecting cases and holding that school principal was final policymaker within the meaning of *Monell* for alleged hostile work

---

[4]     Plaintiff also claims that he is the fifth employee at the School to be subject to discrimination by the DOE and/or Fanning.  (Pl. Opp. 12; *see also* Compl. ¶ 110). However, Plaintiff does not actually plead any facts to support the allegation that these individuals were in fact subject to any discrimination, or that their treatment was similar to Plaintiff's complained-of discrimination in any way.  Plaintiff simply lists four names and makes a conclusory allegation that they "complained about" discrimination of some kind at an unspecified time.  (Compl. ¶ 110).  For example, Plaintiff does not allege that these individuals were also coldly ignored by Fanning, or that these individuals are teachers and that Fanning instructed their supervisors to give them negative evaluations, or even that these individuals were actually subjected to discrimination.

environment).  *But see Agosto* v. *N.Y.C. Dep't of Educ.*, No. 19-2738, — F.3d —,
2020 WL 7086060, at *9 (2d Cir. Dec. 4, 2020) (declining to adopt the position
that "a public school principal acts as a final policymaker to the extent that the
ultimate harm that befell the plaintiff was under the principal's control").
However, as explained below, Plaintiff has failed to plead that he experienced a
hostile work environment, regardless of whether that environment was
attributable to a municipal policy or custom.  Plaintiff's only relevant timely
allegation, without more — that Fanning treated him coldly — cannot plausibly
be read to allege that the DOE acquiesced in the creation of a hostile
environment at the School.  *See Ruiz* v. *City of N.Y.*, No. 14 Civ. 5231 (VEC),
2015 WL 5146629, at *12 (S.D.N.Y. Sept. 2, 2015) ("Plaintiff's vague and
conclusory statement that the misconduct 'extend[ed] up the chain of
command ...' is simply insufficient to state a plausible *Monell* claim." (first
alteration in original)).  Because Plaintiff has not established the existence of a
hostile work environment, much less the existence of discriminatory decisions
or policies orchestrated by Fanning, he has not adequately pleaded municipal
liability.[5]  However, as discussed below, the Court grants Plaintiff's request for
leave to amend as to his hostile work environment claim.

---

[5]     Plaintiff does not advance any argument specific to his only other timely allegation,
namely his poor 2018-2019 evaluations.  Nevertheless, the Court notes that Fanning is
not a final policymaker with respect to evaluations because, "with regard to teacher
evaluations, the chancellor appears to be the final policymaker."  *Dressler* v. *N.Y.C.
Dep't of Educ.*, No. 10 Civ. 3760 (JPO), 2012 WL 1038600, at *17 (S.D.N.Y. Mar. 29,
2012) ("A principal's teacher evaluation deviating from the chancellor's regulations is
subject to reversal; as such, a principal's evaluations are neither policy nor final."); *see
also Agosto* v. *N.Y.C. Dep't of Educ.*, No. 19-2738, — F.3d —, 2020 WL 7086060, at *7-8
(2d Cir. Dec. 4, 2020) (holding that principal is not final policymaker with respect to

### 3.  Plaintiff Has Failed to State Claims on Which Relief Can Be Granted

The Court next addresses the merits of Plaintiff's race discrimination, national origin discrimination, and retaliation claims, with an eye towards Plaintiff's request for leave to amend.[6]  The Court finds that Plaintiff's complaint fails to state claims for which relief can be granted, but, as discussed in greater detail below, the Court believes that it should grant Plaintiff leave to amend his claims of a hostile work environment.

### a.  Plaintiff's Hostile Work Environment Claims Fail

"A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Morgan*, 536 U.S. at 117.  "It is axiomatic" that a hostile work environment claim is only actionable "when it occurs because of an employee's sex, or other protected characteristic." *LeLaurencio* v. *Brooklyn Children's Ctr., Superintendent*, 111 F. Supp. 3d 239, 248 (E.D.N.Y. 2001) (quoting *Brown* v. *Henderson*, 257 F.3d 246, 252 (2d Cir. 2001)).  "To establish a hostile work environment under Title VII ... or § 1983, a plaintiff must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Littlejohn*, 795 F.3d at 320-21 (quotation marks and citations omitted).

---

teacher evaluations and reviews); *Krzesaj* v. *N.Y.C. Dep't of Educ.*, No. 16 Civ. 2926 (ER), 2017 WL 1031278, at *10 (S.D.N.Y. Mar. 15, 2017) (same).

[6]     As explained above, Plaintiff's failure to hire claim is completely time-barred and so the Court will not address the merits of that claim here.

"The incidents complained of must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Littlejohn*, 795 F.3d at 321 (citation omitted).  In evaluating "whether a plaintiff suffered a hostile work environment," a court "consider[s] the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Id.* (citation omitted).  "This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive."  *Id.*

Defendant argues that Plaintiff's allegations are "not objectively pervasive or severe enough to alter the conditions of Plaintiff's employment and create an abusive working environment." (Def. Br. 16).  Plaintiff responds that he has adequately established a hostile work environment, but he cites primarily to conduct that occurred before December 19, 2016, and thus is time-barred. (*See* Pl. Opp. 19).  The Court has already explained why the continuing violation doctrine does not apply here, and as detailed below, the Court agrees with Defendant that Plaintiff's remaining timely allegations are insufficient to make out a claim for a hostile work environment.

Focusing on the timely allegations, the only non-conclusory allegations in this category are that Fanning "acted very coldly" towards Plaintiff and that Plaintiff received negative performance evaluations for discriminatory and/or

retaliatory reasons.  (Compl. ¶¶ 98, 105).  These allegations do not plausibly allege that "the workplace [was] permeated with discriminatory intimidation, ridicule, and insult."  *Littlejohn*, 795 F.3d at 320.  Indeed, the events alleged — considered individually or in tandem — are not sufficiently continuous, severe, or disruptive to show that Defendant subjected Plaintiff to a hostile work environment.  *Id.*; *see also, e.g.*, *Fleming* v. *MaxMara USA, Inc.*, 371 F. App'x 115, 119 (2d Cir. 2010) (summary order) (concluding that no hostile work environment existed even though "defendants wrongly excluded [plaintiff] from meetings, excessively criticized her work, refused to answer work-related questions, arbitrarily imposed duties outside of her responsibilities, threw books, and sent rude emails to her"); *Davis-Molinia* v. *Port Auth. of N.Y. & N.J.*, No. 08 Civ. 7586 (GBD), 2011 WL 4000997, at *11 (S.D.N.Y., Aug. 19, 2011) (finding that "diminished [job] responsibilities," "exclu[sion] from staff meetings," deliberate "avoid[ance]," "yell[ing] and talk[ing] down to," and an increased workload of menial tasks, among other factors, was not enough to show that defendants' conduct was sufficiently severe or pervasive), *aff'd*, 488 F. App'x 530 (2d Cir. 2012) (summary order).  For example, Plaintiff does not explain why Fanning's behavior of acting "coldly" towards Plaintiff rises to the level of pervasive or severe harassment necessary to establish a hostile work environment claim.  *Accord Mohan* v. *City of New York*, No. 17 Civ. 3820 (KPF), 2018 WL 3711821, at *14 (S.D.N.Y. Aug. 3, 2018) (finding that allegation of Defendant's "very unsettling" behavior towards Plaintiff was insufficient to establish connection between alleged conduct and the creation of a hostile

work environment).  Additionally, Plaintiff does not explain how negative performance evaluations in the 2018-2019 school year support his claims of a hostile work environment.  *See Plahutnik* v. *Daikin Am., Inc.*, 912 F. Supp. 2d 96, 106 (S.D.N.Y. 2012) ("[E]xcessive criticism is generally insufficient to support a claim of a pervasive or severe hostile work environment[.]" (citing *Fleming*, 371 F. App'x at 119)).  Thus, Plaintiff has failed to allege a hostile work environment, and to the extent his claims for race discrimination, national origin discrimination, and retaliation are premised on a hostile work environment (*see* Compl. ¶¶ 115, 125, 134), these claims fail.

### b.    Plaintiff's Discrimination Claims Fail

To state a claim for employment discrimination pursuant to § 1983, Plaintiff must allege that "[i] the employer took adverse action against him and [ii] his race, color, religion, sex, or national origin was a motivating factor in the employment decision."  *Vega*, 801 F.3d at 86.  Defendant argues that Plaintiff's claims fail because, *inter alia*, Plaintiff did not allege that he suffered an adverse employment action.  (Def. Br. 13; Def. Reply 4-5)  Plaintiff contends that his complaint alleges two adverse employment actions: (i) that "Plaintiff's demotion from a dean to a regular teaching position" constitutes an adverse employment action (Pl. Opp. 14-15), and (ii) that "he suffered a hostile work environment on the basis of his race and/or national origin, [which] can constitute an adverse employment action," (*id.* at 15).[7]  The Court agrees with

---

[7]    Plaintiff does not allege that his negative performance evaluations for the 2018-2019 school year constitute an adverse employment action.  (*See generally* Pl. Opp.). However, in the interest of completeness, the Court notes that "a negative performance review, without more, does not represent an adverse employment action."  *Chung* v. *City*

Defendant that Plaintiff failed to adequately plead that he suffered an adverse employment action.

*First*, as explained above, Plaintiff's allegations regarding the failure to renew his deanship are time-barred because they accrued several months before December 19, 2016.  Therefore, this allegation cannot serve as an adverse employment action sufficient to sustain claims for race or national origin discrimination.  *Accord Morgan*, 536 U.S. at 122.  *Second*, although retaliatory co-worker harassment can constitute an adverse employment action, *see Richardson* v. *N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 446 (2d Cir. 1999), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co.* v. *White*, 548 U.S. 53 (2006), as explained in greater detail above, Plaintiff has failed to adequately allege a hostile work environment claim.  Thus, Plaintiff has not established that he suffered any adverse employment action, and as a result, his race and national original discrimination claims must fail.[8]

### c.    Plaintiff's Retaliation Claim Fails

To state a claim for retaliation under § 1983, a complaint must contain allegations that (i) the "defendants discriminated — or took an adverse

---

*Univ. of N.Y.*, 605 F. App'x 20, 22 (2d Cir. 2015) (summary order); *see also Kpaka* v. *City Univ. of N.Y.*, No. 14 Civ. 6021 (RA), 2016 WL 4154891, at *7 (S.D.N.Y. Aug. 2, 2016) ("'Negative evaluations can be adverse employment actions only if they give rise to material adverse changes in work conditions.'" (quoting *Hawana* v. *City of New York*, 230 F. Supp. 2d 518, 528 (S.D.N.Y. 2002))).  Plaintiff does not allege that he suffered any material adverse changes to his work conditions as a result of the negative performance evaluations, therefore this allegation cannot, without more, constitute an adverse employment action.

[8]    Defendant also argues that Plaintiff failed to plead sufficient facts demonstrating that his membership in a protected class was the basis for any alleged discrimination.  (Def. Br. 14).  Because the Court finds that Plaintiff has not adequately pleaded an adverse employment action, it need not reach this issue.

employment action — against [the plaintiff]," (ii) "'because' [the plaintiff] opposed any unlawful employment practice." *Vega*, 801 F.3d at 90 (construing Title VII); *see Lewis* v. *Roosevelt Island Operating Corp.*, 246 F. Supp. 3d 979, 990 n.6 (S.D.N.Y. 2017) ("The standard for retaliation under Title VII [and] § 1983 ... is the same." (collecting cases)). "To establish that a plaintiff's engagement in protected activity was causally connected to the adverse employment action, the plaintiff may rely on temporal proximity between the two events; however, 'the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action.'" *Mohan*, 2018 WL 3711821, at *9 (quoting *Vega*, 801 F.3d at 90).  In other words, "[i]t is not enough that retaliation was a 'substantial' or 'motivating' factor in the employer's decision." *Vega*, 801 F.3d at 90-91 (quoting *Univ. of Tex. Sw. Med. Ctr.* v. *Nassar*, 570 U.S. 338, 361 (2013)).  As discussed above, Plaintiff has failed to establish that he suffered an adverse employment action.  Therefore, for the same reason, Plaintiff's retaliation claim must fail.

### 4.    Plaintiff's Motion to Amend Is Granted in Part and Denied in Part

In the event the Court grants Defendant's motion to dismiss, Plaintiff asks the Court to grant him leave to file an amended complaint.  (Pl. Opp. 23). Defendant argues that Plaintiff should be held to his counsel's representation that Plaintiff would not seek to amend, and that in any event, amendment would be futile.  (Def. Opp. 7-8).  For the reasons discussed below, the Court grants Plaintiff's request for leave to amend in part.

Federal Rule of Civil Procedure 15(a) permits a party to "amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).  Courts are to "freely give leave when justice so requires."  *Id.*; *see also, e.g.*, *McCarthy* v. *Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007); *Otegbade* v. *N.Y.C. Admin. for Children Servs.*, No. 12 Civ. 6298 (KPF), 2015 WL 851631, at *2 (S.D.N.Y. Feb. 27, 2015).  "This permissive standard is consistent with [the Second Circuit's] 'strong preference for resolving disputes on the merits.'"  *Williams* v. *Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011) (per curiam) (quoting *New York* v. *Green*, 420 F.3d 99, 104 (2d Cir. 2005)).  However, leave to amend may be denied if the amendment would be futile.  *See, e.g.*, *Knife Rights, Inc.* v. *Vance*, 802 F.3d 377, 389 (2d Cir. 2015).  Amendment is futile if the "amended portion of the complaint would fail to state a cause of action."  *Parker* v. *Columbia Pictures Indus.*, 204 F.3d 326, 339 (2d Cir. 2000); *see also Kassner* v. *2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007) (holding that amended complaint must be "sufficient to withstand a motion to dismiss under [Federal Rule of Civil Procedure] 12(b)(6)").

As discussed above, Plaintiff's failure to hire claim, and all claims premised on Plaintiff's loss of his dean position, are time-barred.  Therefore, amendment as to these claims would be futile and these claims are dismissed with prejudice.  *See Wallace* v. *N.Y.C. Dep't of Corrs.*, 112 F. App'x 794, 795 (2d Cir. 2004) (summary order) (affirming denial of leave to amend due to futility because statute of limitations had run).  Similarly, amendment as to Plaintiff's

discrimination and retaliation claims based on allegations of negative performance evaluations would also be futile, as Plaintiff would be unable to establish *Monell* liability for negative performance evaluations.  *See, e.g.*, *Agosto*, 2020 WL 7086060, at *7-8 (holding that principal is not final policymaker with respect to teacher evaluations or performance reviews); *see also Niles* v. *O'Donnell*, No. 17 Civ. 1437 (LTS) (BCM), 2017 WL 7369711, at *3 (S.D.N.Y. Aug. 22, 2017), *report and recommendation adopted*, No. 17 Civ. 1437 (LTS) (BCM), 2018 WL 718415 (S.D.N.Y. Feb. 5, 2018) (denying leave to amend on futility grounds where plaintiff could not state a claim for municipal liability).

However, it is not clear that leave to amend as to Plaintiff's hostile work environment claims would be futile.  Thus, to the extent Plaintiff believes he can adequately plead timely claims for race discrimination, national origin discrimination, or retaliation premised on an alleged hostile work environment, the Court grants Plaintiff leave to amend, but only as to these three claims and only to the extent that they are based on a hostile work environment.

**CONCLUSION**

For the reasons set forth in this Opinion, Defendant's motion to dismiss is GRANTED, and Plaintiff's request to file an amended complaint is GRANTED IN PART and DENIED IN PART.  Plaintiff's amended complaint shall be due on or by **January 15, 2021**.

SO ORDERED.

Dated:   December 21, 2020
         New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge